Argued and submitted September 23, reversed and remanded
with instructions November 16, 1981

In the Matter of the Compensation of
Arye Nell Colbert, Claimant.

COLBERT,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Respondent.*

(WCB Case No. 79-7258, CA A20374)

635 P2d 1363

Richard A. Sly, Portland, argued the cause for petitioner. With him on the brief was Bloom, Marandas & Sly, Portland.

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, Salem, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

## WARREN, J.

Claimant appeals from an order of the Workers' Compensation Board, reversing an order of the referee which allowed this claim for aggravation of the psychological component of industrial injuries sustained by claimant in 1975. Claimant makes six assignments of error. The first three challenge the Board's order on the merits of the denied aggravation claim. The fourth is without merit, and the rest require no discussion. On *de novo* review, we reverse.

Claimant's last award of compensation was a stipulated order dated April 15, 1977, for 15 percent unscheduled neck and back disability. While that award does not explicitly refer to claimant's psychiatric condition, we presume that the extent of claimant's "functional overlay," documented in March, 1977, as forming a "significant part" of claimant's "mild" or "minimal" loss of function, was taken into account. We thus measure worsening of the psychiatric problem from the date of the last award in 1977.

The referee found that claimant established a worsening of her psychiatric condition. In reversing the referee, the Board originally stated there was no evidence that claimant had ever been treated for functional overlay and that the preponderance of medical opinion showed no worsening of claimant's "underlying condition" (which could refer either to her physical or psychiatric complaints). In its order denying claimant's motion to reconsider, the Board declared that the record contained "no direct evidence" that claimant's underlying psychological condition had worsened and also stated that claimant's hospitalization for her psychological condition was due to depression that had been an "on-going problem for years even prior to the industrial injury."

Our reading of the record persuades us both that claimant's current psychiatric condition arose out of her physical injuries and that it worsened during the period from April, 1977, to August, 1979. Claimant's functional overlay was observed in 1975 by a clinical psychologist who characterized it as a "moderate anxiety tension reaction"

"largely attributable" to claimant's injuries. That psychologist predicted that severe psychosis could develop if claimant's [physical] condition did not improve. In March, 1977, a treating physician, Dr. Soot, reported that he agreed with a February, 1977, Orthopaedic Consultants' report that a "significant part of [claimant's] symptomatology *and disability* * * * [was] secondary to a functional overlay." (Emphasis added.) Contrary to the assertion of the Board, the record contains a January, 1978, letter from Dr. Soot to SAIF indicating that claimant was hospitalized at Woodland Park Mental Health Hospital in 1977 "because of what appeared to me as being significant psychological adjustment problems to her present disability." Claimant's psychiatric condition continued to be related to her injuries, as documented in Dr. Cherry's report of October, 1979, noting "almost a panic response * * * to her pain situation and the fact that she has seen several doctors without real relief."

With regard to worsening, in 1975 the functional overlay was described by the clinical psychologist as a "moderate psychopathology." In 1977, as noted above, the condition was felt to form a significant part of a mild or minimal loss of function. The first indications that claimant's functional overlay problem was more serious than the "moderate" anxiety previously noted appeared in medical reports in June, 1979. Reporting that month on claimant's fifth visit to the clinic in two years, Orthopaedic Consultants commented:

> "The entire examination is conducted in an atmosphere of relatively poor communication — the patient is rather bizarre in her posturing and guarded in her responses, which makes communication and performance of instructions difficult. She sits with her head held stiffly and her hands shielding her eyes.
> " * * * * *
> "It is obvious from examination of the patient and from her performance during the interview that there is a *serious and profound functional disturbance* present. This has *apparently* been documented on earlier examinations by the Pain Center and by her physician." (Emphasis added.)

In fact, the earlier medical reports referred to had spoken in terms of "hypochondriachal" description of bodily

symptoms and "a degree of accentuation" of claimant's physical complaints. Prior references in reports by Orthopaedic Consultants had been the mere listing of "functional overlay," without amplification, as part of the diagnosis. In contrast to those descriptions of claimant's problem, in June, 1979, Dr. Berkeley, who had treated claimant in a May, 1979, hospitalization, stated: "My overall impression * * * is that there is a *very severe psychological functional overlay* and that the patient should be seen again by a psychiatrist." (Emphasis added.)

Finally, Dr. Cherry reported in August, 1979, that several days after he had examined her, claimant "called me very frantically that she just had too much pain to tolerate. * * * She appears to be much more severely symptomatic than at the time she was closed." In October, 1979, after treating claimant at St. Vincent's Hospital, Dr. Cherry suggested that she should return to the Pain Center and stated emphatically, "I do not believe that her present condition is tolerable."

On balance, we consider the evidence to indicate a compensable worsening of claimant's psychiatric condition in the summer of 1979, since the time of her last award in 1977. As found by the referee, claimant has established an aggravation of her compensable condition. ORS 656.273(1) and (3).

Reversed and remanded with instructions to reinstate the opinion and order of the referee.